IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * |
| Plaintiff, | * |
| v. | * Civil Action No. RDB-14-3598 |
| JOSEPH A. GIORDANO, et al. | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff the Securities and Exchange Commission ("SEC") moves for an Order of Disgorgement, Prejudgment Interest, and Civil Penalty against Defendant Joseph A. Giordano pursuant to the Consent Judgment entered against him on February 10, 2016 ("Plaintiff's Motion") (ECF No. 27). Specifically, the SEC requests that this Court issue an Order requiring Giordano to pay disgorgement of $69,300.00, prejudgment interest of $16,616.49, and a civil penalty of $150,000.00. (*Id.* at 1.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated herein, the SEC's Motion is GRANTED, and defendant Joseph A. Giordano shall pay **$235,916.49** to the SEC.

## BACKGROUND

The SEC initiated this case against defendant Giordano and co-defendants Wilfred T. Azar, III, and Empire Corporation ("Empire") in November 2014.[1] (ECF No. 1.) In its Complaint, the SEC alleged that Giordano violated a series of securities laws, including the

---

[1] Final judgments as to defendants Azar and Empire were entered on June 7, 2016. (ECF Nos. 25, 26.)

1

Securities Act of 1933, the Exchange Act of 1934, the Investment Advisors Act of 1940, and the Investment Company Act of 1940. (ECF No. 1 at ¶ 7.) Specifically, the Complaint alleged that Giordano and the co-defendants "raised more than $7 million from dozens of investors through the unregistered offering of purported bonds issued by Empire by making materially false and misleading statements to investors concerning, among other things, Empire's financial condition, its ability to generate the promised returns, and the safety and risk of the investment." (*Id.* at ¶ 2.) In its Motion, the SEC asserts that, "Giordano played a critical role in the success of the Empire fraud, and alone was responsible for convincing his clients to invest over $1.5 million that they will likely never recover." (ECF No. 27-1 at 1.)

On February 10, 2016, this Court issued a Consent Judgment against Giordano, in which he agreed to "pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty." (ECF No. 19.) The Consent Judgment further provided that "[t]he Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission," and that "[p]rejudgment interest shall be calculated from December 1, 2009, based on the rate of interest used by the Internal Revenue Service for the Underpayment of federal income tax." (*Id.* at 7.)

Plaintiff's Motion is fully ripe for this Court's determination. (ECF No. 27.)

## ANALYSIS

### A. Disgorgement and Prejudgment Interest

This Court explained in *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 782 (D. Md. 2009), that:

> "When securities fraud is found, courts may order disgorgement. Disgorgement is an equitable remedy designed to prevent the unjust enrichment of the wrongdoer and to deter others from violating the federal securities laws. Accordingly, disgorgement is not limited to an extraction of ill-gotten gains from the fraud. Indeed, the district court has broad discretion in determining whether

2

to award disgorgement and in what amount. It is also recognized that the disgorgement calculation is inexact; it is impossible to say with certainty what portion of [a defendant's] profits is attributable to his securities violations. Therefore, a court's disgorgement calculation need only be a reasonable approximation of gains causally connected to the fraud."

S.E.C. v. Resnick, 604 F. Supp. 2d 773, 782 (D. Md. 2009) (internal citations omitted).

In this case, the SEC seeks disgorgement in the amount of $69,300.00. (ECF No. 27-1 at 4.) In support of this claim, the SEC has produced a copy of the Internal Revenue Service 1099-MISC form issued by Empire to Giordano reflecting nonemployee compensation of $69,300.00. (ECF No. 27-4.) Plaintiff asserts that this amount reflects the value of Giordano's allegedly ill-gotten gains.

Giordano argues in his Opposition to Plaintiff's Motion that because he incurred $24,000.00 in expenses in order to earn the $69,300.00, his "total compensation net of expenses was only $45,300." (ECF No. 28 at 3.) Accordingly, Giordano argues, disgorgement should be limited to his net income related to the fraud.

"[I]t is well established that defendants in a disgorgement action are 'not entitled to deduct costs associated with committing their illegal acts.'" F.T.C. v. Bronson Partners, LLC, 654 F.3d 359, 375 (2d Cir. 2011) (quoting SEC v. Cavanagh, 2004 WL 1594818, at *30 (S.D.N.Y. July 16, 2004)). See also F.T.C. v. Alban, No. CIV.A. MJG-11-1483, 2014 WL 1236690, at *3 (D. Md. Mar. 24, 2014) (following the rule stated in Bronson). Thus, even if defendant's ultimate profit from the alleged illegal activities was less than that which he was paid by co-defendant Empire, disgorgement of the full amount is still warranted.

On the matter of prejudgment interest, the SEC has submitted the sworn affidavit of Michael McGraw, in which Mr. McGraw states under penalty of perjury that the appropriate amount of prejudgment interest on the $69,300.00 in funds to be disgorged is $16,616.49. (ECF

No. 27-3.) Exhibit C to the affidavit details the calculation of this figure. (ECF No. 27-5.) Giordano does not challenge this calculation, but does, as noted above, dispute the underlying principal figure. Having determined that Giordano shall disgorge $69,300.00, however, it follows that he shall also be ordered to pay $16,616.49 in prejudgment interest.

Thus, Giordano shall be ordered to pay a total of **$85,916.49** in disgorgement and prejudgment interest.

### B. Civil Penalty

The Consent Judgment also provides for the imposition of a civil penalty to be determined by the Court pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), Section 42(e)(1) of the Investment Company Act [25 U.S.C. § 80a-4l(e)(l), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9. (ECF No. 19 at 6-7.)

In its Motion, the SEC requests a maximum third tier penalty of $150,000.00. (ECF No. 27-1 at 6.) A "third tier" violation is one that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C). In this case, the SEC argues, Giordano's conduct both involved fraud and caused "his clients to invest over $1.5 million that they will likely never recover." (ECF No. 27-1 at 1.) The SEC further notes that "when Giordano became aware of Empire's inability to make redemption payments to investors, **he continued to solicit new investors, selling over $700,000 worth of bonds even after he became aware that Empire bounced checks to several of his customers.**" (ECF No. 27-1 at 8) (citing Compl., ECF No. 1 at ¶¶ 52-55) (emphasis added).

4

Giordano argues in opposition that his purportedly dire financial situation leaves him incapable of paying the $150,000.00 fine sought by the SEC. (ECF No. 28 at 2.) In particular, Giordano notes that the State of Maryland has reduced the fine it had imposed on him from $100,000 to $25,000 based on his inability to pay the full amount. (*Id.* at 1; ECF No. 28-3.) He further argues that the SEC's Order bars him from working as a financial advisor, and that in his currently employ as a casino dealer, he earns only $700 per week after taxes. (ECF No. 28 at 2; ECF No. 28-2.) Finally, Giordano asserts that in light of the state government fine, the "humiliation of bankruptcy, loss of business reputation and loss of career," and his dire present financial situation, the punitive and deterrent purposes of the SEC action have already been satisfied; thus, he argues, further penalty is unwarranted. (ECF No. 28 at 2.)

In its Reply, the SEC argues that the State of Maryland's decision to reduce its imposed penalty is irrelevant to the instant case, and, moreover, that "[s]ubstantial civil penalties are necessary to deter others from committing similar future acts." (ECF No. 31 at 2.) As "Giordano played a critical role in a fraud that caused investors to lose more than $7 million," "the public needs to know that those who engage in similar acts will be severely sanctioned." (*Id.*) With respect to Giordano's financial situation and ability to pay, the SEC notes that "[n]either the Court nor the Commission has a clear view of Giordano's complete financial condition. Indeed, the Commission is aware that Giordano is a beneficiary of a trust that produced income (at least in 2015) but has little information about that trust, and that he owns a house worth approximately $980,000." (ECF No. 31 at 3, n. 1.) The SEC has also submitted Giordano's signed and sworn "Statement of Financial Condition," dated December 30, 2014. (ECF No. 31-2.) The Statement of Financial Condition reflects that defendant's assets as of

December 30, 2014 amount to over $1 million, even if a substantial portion of these assets are encumbered. (*Id.* at 1-5.)

In light of the foregoing considerations, the Court finds that the SEC's requested civil penalty of $150,000.00 is justified. As the United States Court of Appeals for the Eleventh Circuit has stated, "nothing in the securities laws expressly prohibits a court from imposing penalties or disgorgement liability in excess of a violator's ability to pay." *S.E.C. v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008). *See also Sec. & Exch. Comm'n v. Payton*, --- F. Supp. 3d ---, 2016 WL 6948685, at *6 (S.D.N.Y. Nov. 28, 2016) (quoting *Warren* approvingly).

Thus, Giordano shall be ordered to pay a total of **$150,000.00** as a civil penalty pursuant to the Consent Judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for an Order of Disgorgement, Prejudgment Interest, and Civil Penalty against defendant Joseph A. Giordano (ECF No. 27) is GRANTED. Judgment shall be entered against defendant Giordano in the amount of **$235,916.49**.

A separate Order follows.

Dated: January 6, 2017

/s/ Richard D. Bennett
Richard D. Bennett
United States District Judge